NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JENNIFER PARKER, *Petitioner*.

No. 1 CA-CR 15-0800 PRPC
FILED 3-24-16

Petition for Review from the Superior Court in Maricopa County
No. CR2010-113727-001
The Honorable Susan M. Brnovich, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Diane Meloche
*Counsel for Respondent*

Jones Skelton & Hochuli PLC, Phoenix
By Lori L. Voepel
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**C A T T A N I**, Judge:

¶1        Petitioner Jennifer Parker seeks review of the superior court's order dismissing her petition for post-conviction relief.  For reasons that follow, we accept review but deny relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In July 2010, Parker pleaded guilty to theft, a class 5 felony. Parker and her family had legally immigrated to the United States in 1993, and Parker's written plea agreement noted potential immigration consequences that could result from a criminal conviction.  In particular, paragraph eight of the agreement provided as follows: "I understand that pleading guilty or no contest to a crime may affect my immigration status. Admitting guilt may result in deportation even if the charge is later dismissed.  My plea or admission of guilt could result in my deportation or removal."

¶3        Parker initialed this paragraph and, at the change of plea hearing, acknowledged that she had reviewed and understood the agreement.  It is not clear, however, whether the superior court also orally advised Parker, as required under Rule 17.2(f) of the Arizona Rules of Criminal Procedure, that her guilty plea might have immigration consequences.[1]

¶4        Although the hearing transcript does not reflect the required Rule 17.2(f) advisement, the State notes that the Maricopa County Superior

---

[1]        Rule 17.2(f) requires the court to advise a defendant who is not a U.S. citizen that "If you are not a citizen of the United States, pleading guilty or no contest to a crime may affect your immigration status.  Admitting guilt may result in deportation even if the charge is later dismissed.  Your plea or admission of guilt could result in your deportation or removal, could prevent you from ever being able to get legal status in the United States, or could prevent you from becoming a United States citizen."

Court generally makes the advisement to groups of defendants before moving on to plea hearings in individual cases. Although Parker has not provided a transcript of the group advisement, the transcript of Parker's change of plea hearing reflects that the court inquired whether Parker had been "in court and listening earlier this morning when I went over your constitutional rights" (to which Parker responded "Yes") and whether "When you plead guilty to—or were you in court and listening when I went over the general possible consequences of pleading guilty to a felony" (to which Parker again replied "Yes").

¶5        The superior court deferred acceptance of the plea until sentencing to allow the State to comply with victim's rights requirements. At sentencing in early September 2010, the court accepted Parker's plea and placed her on probation. The court advised Parker that "If you disagree with what I've done, you have 90 days from today to file a petition for post-conviction relief ["PCR petition"]. If you fail to do so, you lose that right."

¶6        On October 25, 2010, before the end of the 90-day period for filing a PCR petition, the State charged Parker with another crime, alleging fraudulent schemes and artifices based on conduct that occurred after entering the plea but before sentencing in the first case. In May 2011, Parker pleaded guilty to attempted fraudulent schemes and artifices, a class 3 felony, with a stipulated five-year prison sentence. Her written plea agreement in the second case contained the same provision regarding immigration consequences as the written plea agreement in the first case. It further provided "that if [Parker] is sentenced to prison . . . [in the first case] it can be concurrent" with the five-year stipulated prison term in the second case.

¶7        At sentencing in the second case, the prosecutor noted—in Parker's presence—that Parker's counsel "seems to think that [Parker] is likely to be deported after she gets out of prison." The court also warned Parker that "you'll have to deal with the federal court on deportation. All I can do is advise you when you have the change of plea that this is going to have an [e]ffect on your status, but I don't have any control over it. It's another court entirely. You understand that, right?" Parker replied "Yes." The court then imposed a five-year prison sentence.

¶8        At that same hearing, the court indicated an intent to leave in place the probation grant in the first case. Parker's counsel asked, however, that the court revoke probation and impose a concurrent 1.5 year prison sentence. Counsel explained, "I think Ms. Parker would also reject the probation grant. I do think that's one of the things with the likely

immigration consequences that we would face." Given that request, the court sentenced Parker to a 1.5-year prison term in the first case, to be served concurrently with the five-year prison term in the second case. The court then advised Parker of her rights of review and had Parker sign a written "Notice of Rights of Review" form explaining those rights, including the requirement that any PCR petition notice be filed within 90 days. Parker did not file a PCR petition until almost three years later.

¶9 In April 2012, the United States Department of Homeland Security ("DHS") filed a Notice to Appear, charging Parker as being subject to removal for having been convicted of two crimes involving moral turpitude. Sometime later, DHS filed an additional charge of deportability based on Parker's theft conviction "for which the term of imprisonment was at least one year." Parker appeared before an immigration judge in January 2013 and March 2014 while still serving her sentences. At the March 2014 proceeding, she appeared with counsel and contested removability.

¶10 In late August 2014, more than 1,000 days after the imposition of her sentences, and more than 850 days after DHS's notification that she was subject to removal, Parker filed her first PCR petition. She alleged as grounds for relief under Rule 32 of the Arizona Rules of Criminal Procedure that (1) her guilty plea and conviction were obtained "in violation of Rule 17.2" because she had not been advised of the "ramifications as a non-U.S. citizen" of her guilty plea, and (2) she received ineffective assistance of counsel. She claimed that the reason her PCR was untimely was that she had only recently discovered that the court did not advise her of the immigration consequences of her plea as required by Rule 17.2(f), and that this discovery was "new evidence." She did not argue in her petition, nor assert in her affidavit attached to her petition, that the failure to timely commence PCR proceedings was based on counsel's advice.

¶11 The court summarily dismissed the PCR petition, finding the claims were precluded because they were not timely presented. Parker filed an untimely motion to reconsider, arguing her claims were excepted from preclusion as contemplated by Rule 32.2(b). Rule 32.2(b) provides for exceptions to preclusion for, among other reasons, claims involving newly discovered evidence, actual innocence, and for delay claims when the defendant was not at fault for the delay. Although she referenced Rules 32.1(e) (newly discovered evidence), (f) (delayed PCR), and (h) (actual innocence), she did not set forth specific facts or argument to support her claims. Instead, she argued that she was entitled to relief because she "was not informed of her rights under Rule 17.2(f) by the court, nor did her

4

counsel insist that such rights regarding deportation be explained to her by the court."

¶12        Before the court ruled on the motion to reconsider, new counsel appeared on Parker's behalf and filed a request to amend Parker's sentence, or alternatively, to grant the motion to reconsider.  In this filing, Parker argued that because she had been sentenced to a term of at least one year of imprisonment for the theft conviction, the conviction was an "aggravated felony" under federal law, for which Parker would be subject to automatic deportation.  She asserted that neither the court, nor her counsel, had advised her of this consequence.  To avoid automatic deportation, Parker requested that the court amend her sentence in the first case to 364 days.

¶13        Parker alternatively urged the court to grant the motion to reconsider. She claimed that her recent discovery that she had not been advised of the immigration consequences of her guilty plea constituted newly discovered evidence.  She also argued that under Rule 32.2(b), her claims of actual innocence and delayed PCR were not precluded.  Given these filings, the court ordered the State to file a response.

¶14        Before the State responded, Parker filed a supplement to her request for an amended sentence, and attached the federal government's removal order, dated June 30, 2015, which ordered that Parker be removed to the United Kingdom.[2]   Parker again asked the court to amend her sentence in the first case to 364 days because "at the time Ms. Parker entered into her plea, neither trial counsel nor the court explained the consequences of the probation violation case to Ms. Parker. . . . A mere 'nunc pro tunc' amendment to the sentence from 1-1/2 years to 364 days would remove it as an aggravated felony."

¶15        The State's response argued that, with the exception of her claim pursuant to Rule 32.1(f) (delayed PCR), Parker's claims should have been raised within 90 days of sentencing.  The State asserted that Parker's other claims raised due process and ineffective assistance of counsel issues, which are constitutional claims subject to preclusion if not timely raised.

---

[2]        Although the order of removal is based on Parker's theft conviction, or "aggravated felony," the order notes that an immigration judge also found that the two crimes involved moral turpitude, but that consideration of this factor would be held in abeyance because "the Court has found [Parker] removable under the aggravated felony charge, which also precludes [Parker's] eligibility for many possible forms of relief."

*See* Ariz. R. Crim. P. 32.1(a), 32.2(a)(3). The State further argued that Parker's delayed PCR claim was not colorable, noting that she had been personally advised on two separate occasions of her right to file a PCR within 90 days, and that she had signed two "Notice of Rights of Review after Conviction and Procedure" advisements. The State also pointed out that Parker had offered no explanation for her failure to timely file her PCR, and that waiting for DHS to decide whether to deport her was not a basis to excuse her untimeliness.

¶16            Although Parker's motion to reconsider was untimely, the court considered the merits and denied the motion:

> Defendant's PCR was filed over 4 years after her sentencing. It was untimely. Defendant wants this Court to consider the claim under Rules 32.1 (e), (f), or (h). Defendant's argument under Rule 32.1(e) fails as there is no "newly discovered material fact" that "would have changed the verdict or sentence." She asserts that the newly discovered fact[] is that she is subject to deportation. That is not a newly discovered material fact and even if it was, it would not have changed the verdict or sentence. Defendant knew that she was not a US citizen at the time that she entered into the first plea agreement. She also knew that a guilty plea may affect her immigration status and could result in deportation because it was in writing in her plea agreement. She initialed the paragraph indicating that she read it and understood it. Defendant committed a second offense while awaiting sentence in her first case. She was again advised that pleading guilty to a crime could affect her immigration status and may result in deportation on May 18, 2011 when she entered into her second plea agreement. Defendant cites no facts to support relief under Rule 32.1(f) or (h).

The court also denied Parker's request to amend her sentence in the first case, finding that it had no authority to do so.

¶17            Parker then filed another motion for rehearing. For the first time, she claimed that she had not filed a timely PCR based on her prior counsel's advice. Parker's current counsel submitted an attached declaration in which counsel speculated that Parker's prior counsel had "recommended that she not seek independent counsel to consider filing a Rule 32 petition, perhaps because he was concerned that if she challenged the plea agreement, some court at a later date could possibly set aside the

agreement, risking imposition of consecutive prison sentences." The motion for rehearing indicated Parker was in custody and that the motion would be supplemented with Parker's affidavit or declaration as soon as it became available.

¶18        A short time later, Parker filed a declaration stating that her trial counsel did not explain the purpose of post-conviction relief. She also stated that trial counsel "recommended that I not challenge the state and the plea agreement, out of concern that the state could come back and run my sentences consecutively, instead of concurrently." The court denied the motion for rehearing, but granted Parker's request for an extension of time to file a petition for review. Parker thereafter filed the pending petition for review.

## DISCUSSION

¶19        Parker asserts three bases for relief: (1) "neither her trial counsel nor the trial court advised her that by pleading guilty to a class five felony theft . . . she would be subject to automatic deportation if her probation were ever revoked and she was sentenced to prison," (2) "neither her trial counsel nor the trial court advised her that by acquiescing in her attorney's request for the court to revoke her probation and instead impose a 1.5 year prison term . . . she would automatically be deported upon completion of her prison sentence," and (3) her failure to timely file a notice of post-conviction relief within 90 days was without fault on her part. We review the superior court's denial of a petition for post-conviction relief for "a clear abuse of discretion." *State v. Swoopes*, 216 Ariz. 390, 393, ¶ 4 (App. 2007).

¶20        Parker's first two issues present claims for relief under Rule 32.1(a) and as such, Parker was required to present them within 90 days of sentencing. Ariz. R. Crim. P. 32.4(a). Any claim that could have been raised in an earlier PCR proceeding is precluded, except for claims raised under Rule 32.2(b). Ariz. R. Crim. P. 32.4(a); *see also State v. Shrum*, 220 Ariz. 115, 118, ¶¶ 12–13 (2009) (other than claims excepted under Rule 32.2(b), post-conviction claim is waived if not timely raised); *State v. Peek*, 219 Ariz. 182, 183, ¶ 4 (2008) (same). Thus, the court did not abuse its discretion by denying relief on these claims.

¶21        Parker's third issue—in which she asserts that her failure to timely file a notice of post-conviction relief was without fault on her part— is not time barred. Ariz. R. Crim. P. 32.1(f), 32.2(b). But it is not colorable. In a similar case, this court explained:

[Petitioner] is not arguing he was unaware of his right to petition for post-conviction relief or of the time within which a notice of post-conviction relief must be filed or that he intended to challenge the court's decision but his attorney or someone else interfered with his timely filing of a notice as contemplated by Rule 32.1(f). *See* Ariz. R. Crim. P. 32.1(f) 2007 cmt. Indeed, the trial court informed [Petitioner] that he had a right to seek post-conviction relief. Rather, his claim is essentially that, based on information that later came to light, he regretted having failed to challenge his conviction. Such a claim is not cognizable under Rule 32.1(f). *See* Ariz. R. Crim. P. 32.1(f) 2007 cmt.; *cf. State v. Montez*, 102 Ariz. 444, 447, 432 P.2d 456, 459 (1967) ("[A] convicted felon may acquiesce in the advice and decision of counsel not to appeal, so as to make that decision his. We will not recognize the claim that the decision of counsel in which he acquiesced deprived him of the right to counsel . . . so as . . . to permit it to be asserted as the basis of good cause for a delayed appeal.") . . . .

*State v. Poblete*, 227 Ariz. 537, 539–40, ¶ 7 (App. 2011).

**¶22**        Here, Parker's claim that she did not timely file a PCR petition because of her counsel's advice is likewise not colorable. This claim was not raised in Parker's petition for post-conviction relief, or in her first motion for rehearing. Until that time, Parker claimed she had not timely initiated PCR proceedings because she had only recently discovered that the court did not advise her of immigration consequences under Rule 17.2(f) when the issue arose during an immigration case. Parker did not assert that her filing delay was based on counsel's advice until she filed her second motion for rehearing, and then only supported the assertion with an unsworn statement.[3] On these facts, Parker has not shown that the superior court abused its discretion by denying relief.

---

[3]        Even if presented in the form of an affidavit, a defendant's self-serving assertions are generally insufficient to raise a colorable claim. *State v. Wilson*, 179 Ariz. 17, 20 (App. 1993); *see also State v. Goswick*, 142 Ariz. 582, 585 (1984).

## CONCLUSION

¶23     For the foregoing reasons, we grant review but deny relief.



Ruth A. Willingham · Clerk of the Court
FILED: jt